# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN L. RANDALL, ) | 1:09-cv-1439 SKO |
| ) | |
| ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, ) | **SOCIAL SECURITY COMPLAINT** |
| ) | |
| v. ) | (Doc. 2) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

# FACTUAL BACKGROUND

Plaintiff was born in 1965, has an eleventh-grade education, and previously worked as a diesel mechanic and roughneck on a drilling rig. (Administrative Record ("AR") 12, 21-22, 104.) On March 13, 2006, Plaintiff filed applications for DIB and SSI, alleging disability beginning on January 27, 2006, due to chronic obstructive pulmonary disease ("COPD"), high blood pressure, sleep apnea, and lung infection. (AR 103-06, 120.)

**A.   Medical Evidence**

On March 24, 2006, pulmonary function testing by San Joaquin Valley Pulmonary Medical Group indicated moderate obstructive airways disease. (AR 315.) On April 12, 2006, a sleep study noted Plaintiff's mild obstructive sleep disordered breathing. (AR 249.) On May 5, 2006, an echocardiogram revealed mild left atrial enlargement, moderate left and right ventricular enlargement, normal cardiac valves, and trace tricuspid regurgitation. (AR 245.)

On May 2, 2006, Plaintiff reported on a questionnaire regarding his daily activities that he shopped for groceries at least three times a month, vacuumed his living room, and took out the garbage. (AR 129.)

On July 10, 2006, Emanuel Dozier, M.D., an internist, performed a consultative examination of Plaintiff. (AR 219-222.) As for Plaintiff's medical history, Dr. Dozier noted that "[t]here is no oxygen used." (AR 219.) Dr. Dozier observed Plaintiff "in ambulation down the hall and shows no signs of pain, ataxia or shortness of breath. He walks with a normal steppage gait. He is able to sit during the interview without discomfort. He is able to transfer on and off the examination table without assistance." (AR 220.)

On August 18, 2006, Anne Khong, M.D., a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC") and found that Plaintiff (1) could occasionally lift and/or carry up to 10 pounds and frequently less than 10 pounds; (2) stand for at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing/pulling with the upper and lower extremities. (AR 281.) Plaintiff could

occasionally climb ramps and stairs (but never ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, and crawl. (AR 282.) Plaintiff had no manipulative, visual, or communicative limitations, but he was to avoid concentrated exposure to fumes, odors, dust, and gases because of his COPD. (AR 282-83.) Dr. Khong's findings were affirmed by another physician on March 15, 2007. (AR 276, 279.)

On June 11, 2007, a treatment note indicated that Plaintiff continued to smoke cigarettes and was advised to decrease his tobacco use. (AR 320.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 44-60, 63-69.)

**1.     Plaintiff's Testimony**

On May 13, 2008, ALJ James P. Berry held a hearing where Plaintiff testified to the following. He stopped working because of breathing problems, chest pain, high blood pressure, diabetes, and a "flushing disease." (AR 23.) He also suffered from carpal tunnel syndrome involving both wrists, swollen feet, heart failure, and back, shoulder, arms, hips, and knee pain. (AR 23-24, 26-27.) Plaintiff, however, did not undergo surgery for his carpal tunnel syndrome, and he did not wear braces on his hands. (AR 27.) He had lost weight and now weighed 325 pounds. (AR 21.)

Plaintiff used oxygen "sometimes" every day, depending "on the weather at times." (AR 24.) According to Plaintiff, he was using an oxygen machine at the time of Dr. Dozier's examination, but did not bring it with him because his prescription had not been filled. (AR 29.)

Plaintiff also had right thigh weakness, had surgery on the right thigh and foot, and could not kneel, stoop, or squat. (AR 29.) Two weeks before the hearing, Plaintiff was admitted to the hospital because he believed he had a heart attack. (AR 31, 34.) Plaintiff suffered from headaches

1  every day, and his blood pressure was uncontrolled even with medication. (AR 27, 32.) Plaintiff
2  only took ibuprofen to alleviate his pain, however. (AR 28.)

3        Plaintiff took Elavil for depression prescribed by his regular doctor but was not receiving any
4  other type of mental health treatment. (AR 33-34.) When contacted by the Social Security
5  Administration in August 2006, however, Plaintiff had stated "very firmly" that there was "no mental
6  or [psychological] issue that need[ed] to be addressed" and that he did not need treatment or
7  medication; his depression did not prevent him from working. (AR 157.)

8        Plaintiff could only lift one to two pounds, walk three feet, stand for 30 minutes, and sit for
9  three to four minutes at a time. (AR 25-26.) Plaintiff also testified, however, that he could sit for
10 thirty minutes in an eight-hour period. (AR 35.)

11       Plaintiff lived with his wife and two children, and he received income from AFDC, or Aid
12 to Families with Dependent Children. (AR 12, 30.) Plaintiff did not cook, shop, or do any
13 housework but just sat at home watching television. (AR 29, 37.) In applying for benefits, however,
14 Plaintiff reported on a questionnaire that his activities included vacuuming the living room, taking
15 the garbage out, grocery shopping at least three times a month, and visiting his mother. (AR 128-
16 30.)

17       **2.**    **Vocational Expert's Testimony**

18       A vocational expert ("VE") testified that Plaintiff's past work as a diesel mechanic and
19 roughneck was heavy[2] and skilled. (AR 38.) A hypothetical person with the same age, education,
20 and work experience as Plaintiff could not perform Plaintiff's past relevant work if that person had
21 to avoid concentrated exposure to pulmonary irritants and could (1) lift and carry ten pounds
22 occasionally and up to ten pounds frequently, (2) stand and walk for two to four hours out of eight
23 hours, (3) sit for six hours, (4) occasionally climb, balance, kneel, crouch, and crawl. (AR 39.) Such
24 a person could perform the sedentary, unskilled jobs of assembler, order clerk, and surveillance

---

[2] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).

system monitor. (AR 40.) The number of available jobs would be reduced if such a person had to use an oxygen machine while working; the VE did not "typically see people with oxygen machines working" and believed that "it's because whatever causes the need to use an oxygen machine typically involves enough other disability that the person doesn't work." (AR 42.) Such a hypothetical person could not perform any work if he had Plaintiff's self-described limitations. (AR 40-41.)

**C.    ALJ's Decision**

On August 25, 2008, the ALJ issued a decision finding Plaintiff not disabled since January 27, 2006. (AR 5-15.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of January 27, 2006; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) could not perform his past relevant work; and (5) could perform other jobs that exist in significant numbers in the national economy. (AR 10-15.) The ALJ found that Plaintiff had the RFC to (1) lift and carry ten pounds occasionally and up to ten pounds frequently and (2) stand and walk for two to four hours and sit for six hours in an eight-hour workday with occasional climbing, balancing, kneeling, crouching, and crawling. Plaintiff was also to avoid concentrated exposure to pulmonary irritants. (AR 11.)

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (AR 12.) In particular, the ALJ found that, contrary to Plaintiff's testimony regarding heart problems, "an echocardiogram only showed mild left atrial enlargement and moderate left and right ventricular enlargement, and trace tricuspid regurgitation." (AR 13, 245.) Testing by San Joaquin Valley Pulmonary Medical Group

showed only mild obstructive sleep disordered breathing and moderate obstructive airways disease. (AR 13, 249, 315.) The ALJ further noted that "[t]he record does not show any treatment for [Plaintiff's] alleged carpal tunnel of both wrists." (AR 13.) The ALJ, therefore, noted that "[i]t is relevant that [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 13.) The ALJ also found that Plaintiff's daily living activities belied his claim of total disability, noting that Plaintiff "testified that he does not do any shopping but reported going shopping 3 times a month. He also reported [in a daily living activities report as part of his application] he does not do any household chores but reported he vacuums the living room and takes the garbage out. He also reported visiting his mother." (AR 13.)

Plaintiff sought review of this decision before the Appeals Council. On June 16, 2009, the Appeals Council denied review. (AR 1-4.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**D.    Plaintiff's Contentions on Appeal**

On August 13, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ failed to provide legally sufficient reasons to reject Plaintiff's testimony and failed to take into account Plaintiff's need to use an oxygen machine in assessing his RFC.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the

requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC[3] despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### A.   Plaintiff's Credibility

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (AR 12.) Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting his testimony. According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not entirely credible.

#### 1.   Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective complaints, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.    Analysis**

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 12.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed further below, the Court finds that the ALJ gave clear and convincing reasons supported by the record to discount Plaintiff's credibility.

First, the ALJ found that the objective medical evidence in the record did not fully support Plaintiff's subjective complaints. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, it is one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Here, for example, the ALJ found that, contrary to Plaintiff's testimony regarding heart problems, "an

echocardiogram only showed mild left atrial enlargement and moderate left and right ventricular enlargement, and trace tricuspid regurgitation." (AR 13, 245.) Testing by San Joaquin Valley Pulmonary Medical Group showed only mild obstructive sleep disordered breathing and moderate obstructive airways disease. (AR 13, 249, 315.) The ALJ further noted that "[t]he record does not show any treatment for [Plaintiff's] alleged carpal tunnel of both wrists." (AR 13.) The ALJ, therefore, noted that "[i]t is relevant that [Plaintiff] has not generally received the type of medical treatment one would expect for a totally disabled individual." (AR 13.) *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

Second, it was appropriate for the ALJ to consider Plaintiff's activities of daily living in determining that he was not entirely credible. The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability. However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Morgan*, 169 F.3d at 600; *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959; *Morgan*, 169 F.3d at 600; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).

In *Stubbs-Danielson*, for example, the court found that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and

10

helping her husband in managing finances. 539 F.3d at 1175. These activities tended to suggest that the claimant may have still been capable of performing the basic demands of unskilled work on a sustained basis. *Id.*

The ALJ found that Plaintiff's daily living activities belied his claim of total disability, noting that Plaintiff "testified that he does not do any shopping but reported going shopping 3 times a month. He also reported [in a daily living activities report as part of his application] he does not do any household chores but reported he vacuums the living room and takes the garbage out. He also reported visiting his mother." (AR 13.) The ALJ appropriately considered Plaintiff's admitted activities of daily living, which included housekeeping, shopping, and visiting his mother, which are comparable to the activities in the cases cited above. The ALJ found that Plaintiff's statements were inconsistent with his claimed inability to work. Plaintiff's activities of daily living were, therefore, clear and convincing evidence to discount his credibility.

In sum, the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196-97 (9th Cir. 2004) (claimant's contradictory testimony unsupported by objective medical evidence constituted substantial evidence in support of ALJ's negative credibility determination). Moreover, the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

**B.   Plaintiff's Oxygen Use**

Plaintiff asserts that he needs to use oxygen every day, a factor that, according to the VE, would reduce the number of available jobs that Plaintiff could perform despite his limitations. Plaintiff contends that a remand to the Commissioner is warranted because the "ALJ's decision is silent as to his consideration of [Plaintiff's] testimony regarding the extent of his use of oxygen." (Doc. 14 at 8.) Alternatively, Plaintiff argues that the ALJ failed to properly consider the impact that Plaintiff's oxygen use would have on the occupational base; therefore, remand is warranted for the

ALJ to determine the extent of the erosion on the remaining occupational base as a result of Plaintiff's use of oxygen. Defendant maintains that the ALJ properly accounted for Plaintiff's oxygen use in assessing his RFC by excluding him from jobs with concentrated exposure to pulmonary irritants.

In this case, Plaintiff points to no evidence that he would need to use an oxygen machine while working. Contrary to Plaintiff's present assertion that he uses oxygen every day, Plaintiff testified that he used oxygen occasionally and only as needed, depending on the weather. (AR 24, 173.) Moreover, Dr. Dozier noted that Plaintiff was not using oxygen, although Plaintiff claimed at the hearing that he had not brought his oxygen machine to the examination because his prescription had not been filled. (AR 29, 219.) As noted above, pulmonary testing revealed only mild obstructive sleep disordered breathing and moderate obstructive airways disease. (AR 13, 249, 315.) Plaintiff's daily living activities also belied his claim of total disability. (AR 13.) Substantial evidence, therefore, supports the ALJ's reasons for discounting Plaintiff's credibility.

Further, "[a]n ALJ is free to accept or reject restrictions in a hypothetical question [to a VE] that are not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). In addition, "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks omitted). In any event, the ALJ considered the effect of Plaintiff's COPD on his breathing limitations and occasional need for oxygen in determining that Plaintiff's RFC included a limitation to avoid concentrated exposure to pulmonary irritants. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints."). Accordingly, Plaintiff's contention in this regard is unavailing.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Brian L. Randall.

IT IS SO ORDERED.

**Dated:** December 17, 2010            /s/ Sheila K. Oberto
                                                        UNITED STATES MAGISTRATE JUDGE